IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Quint Measuring System, Inc., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | |
| | : | 1:10-cv-01963-JOF |
| | : | |
| Home Depot USA, Inc., et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

This matter is before the court on Defendants' motion for summary judgment [58].

**I.  Background**

   **A.  Procedural History**

Plaintiff, Quint Measuring Systems, Inc., filed suit against Defendants Home Depot USA, Inc., William D. Bastek, and James Ardell, on June 24, 2010, alleging various causes of action surrounding Quint's contract to supply certain tools and equipment to Home Depot. Quint is operated by Richard and Carol Quint whom the court refers to by their first names for the sake of clarity. Bastek was the Home Depot merchant (buyer) responsible for managing Home Depot's relationship with Quint from 2005 until Quint was terminated in 2009. Ardell is the owner and principal of Ardell Sales & Consulting, Inc., a company Quint hired as a consultant and representative in its dealings with Home Depot.

In an order dated March 8, 2011, the court granted in part and denied in part Defendants' motion to dismiss. The court dismissed Plaintiff's claims of breach of fiduciary duty, negligence, gross negligence, negligent misrepresentation, tortious interference with business relations, Georgia Fair Business Practices Act, and a portion of Plaintiff's fraud and breach of contract claims.

The court allowed to proceed Plaintiff's fraud claim alleging that from May 2006 through January 2007, Bastek and Ardell told Quint they were doing everything they could to support Quint products at Home Depot when (according to Plaintiff) they had no present intention to do so and that Bastek falsely told Quint he (Bastek) was committed to finding a "home" for Quint. The court noted the possibility, however, that were Plaintiff's fraud claims to be considered part of the Supplier Buying Agreement between Home Depot and Quint, they might be barred by the merger clause contained in the Supplier Buying Agreement.

The court also allowed to proceed Plaintiff's breach of contract claim relating to an alleged March 2005 agreement concerning merchandise servicing. Because the court denied Defendants' motion to dismiss portions of Plaintiff's fraud and breach of contract claims, the court also did not dismiss Plaintiff's conspiracy to defraud, failure to train, and attorney's fees claims.

2

In the same order, the court granted Defendant Ardell's motion to compel arbitration and dismissed Plaintiff's claims against Defendant Ardell without prejudice.

Defendants answered Plaintiff's complaint and filed a counterclaim for attorney's fees under the terms of the Supplier Buying Agreement and O.C.G.A. § 13-6-11. The parties engaged in discovery and Defendants filed the instant motion for summary judgment.

**B.    Facts**[1]

On April 21, 2004, Quint entered into a Supplier Buying Agreement ("SBA") with Home Depot. The Supplier Buying Agreement provides:

> Except as otherwise noted in the [Purchase] Order and except for any express or implied warranties, guarantees, or representations made by Supplier, and except for any supplemental agreements signed by Supplier and an authorized representative of The Home Depot, the Order represents the entire agreement of the parties. Both parties acknowledge that the Supplier Buying Agreement is a part of the Order. No promise, guarantee or representation not contained in the written Order shall be of any effect unless otherwise agreed to in writing by The Home Depot, including obligations with respect to minimum purchases or exclusivity.

---

[1] The court takes the facts from Defendants' statement of material undisputed facts and Plaintiff's response thereto, as well as Plaintiff's own statement of material facts. The court notes, however, on numerous occasions in Plaintiff's response to Defendants' statements, Plaintiff purports to "deny" a statement by avoiding Defendants' statement of fact but adding other information. These are not proper "denials" under this court's Local Rules. Those rules state that a denial must "directly refute[] the movant's fact" or state that the fact is "not material." *See* LR 56.1(B)(2)(a)(2). If Plaintiff believes a different fact is important Plaintiff can submit its own statement, as Plaintiff has done here. Using this as a basis to "deny" one of Defendants' statements of fact is improper and serves only to make the record more difficult to discern.

3

*See* SBA, ¶ 14.1.  The Supplier Buying Agreement also contains a merger clause which states that these:

> Terms and Conditions, together with the Supplier Reference Manual, all Forms, and any applicable exhibits represent the entire and integrated Agreement between the parties hereto and supersede all prior negotiations, representations or agreements, written or oral.  No changes or modifications to the Terms and Conditions are permitted unless made in writing as an addendum hereto and signed by both parties.

*See* SBA, ¶ 14.9.  The Supplier Buying Agreement also requires that suppliers "bring any claim or dispute against The Home Depot (including payment disputes) within one year after the occurrence of the event giving rise to such dispute."  *See* SBA, ¶ 14.9.  The Supplier Buying Agreement contains a fee-shifting provision:

> All costs and expenses, including but not limited to, attorney's fees, incurred by The Home Depot due to Supplier's violations of or failure to follow any or all of the terms of the Order will be charged to Supplier.  Supplier expressly agrees to reimburse The Home Depot for all such costs and expenses, and Supplier further agrees to reimburse The Home Depot for all such costs and expenses, and Supplier further agrees that, at The Home Depot's option, The Home Depot may deduct such costs and expenses from any sum then or thereafter owing to Supplier by The Home Depot.

*See* SBA, ¶ 14.2.

Effective March 7, 2005, Quint and Home Depot also signed a one page document entitled "USA Domestic – Standard – In Store Service (In Store, New Store & Product Updates)" or "Supplier Store Service Agreement."  Home Depot required its suppliers to enter into a Supplier Store Service Agreement.  This Agreement allowed Home Depot to

4

deduct 5% from the cost of its gross purchases from Quint so that Home Depot would provide service for Quint's products in the Home Depot Stores. *See* Supplier Store Service Agreement, at 1. Typically, such "servicing" could include: assuring that the products, point of purchase boards, and other merchandising elements were in proper order; that the supplier's products were on the shelf in the appropriate locations; and that the products were priced properly.

Under the Supplier Store Service Agreement, Home Depot agreed that:

Funds committed will be used in the best possible manner to generate increased sales and profits for you and The Home Depot. Supplier service recommendations are always welcome; ***however Home Depot reserves the right to spend these funds as it deems fit to promote Home Depot merchandising and service activities.***

*See* Supplier Store Service Agreement, at 1 (emphasis added).

The Agreement also states:

This Agreement amends and supplements the Home Depot Supplier Buying Agreement (SBA) (specifically, the "In-Store Services" in the Terms and Conditions and the Reference Manual). The SBA shall govern the relationship between The Home Depot and Supplier, its affiliates and subsidiaries, provided that nothing contained in this Agreement will alter or amend the provisions of the SBA except as expressly provided herein. In the event of any conflict, inconsistency or incongruity between any provisions of this Agreement and the SBA, this Agreement shall govern and control in all respects. Any termination or expiration of this Agreement for any reason shall not terminate the SBA.

*See* Supplier Store Service Agreement, at 1.

5

The parties also set forth a great number of facts relating to whether Home Depot properly serviced the aisles on which Plaintiffs' products were displayed and the steadily deteriorating relationship between Quint and Home Depot after 2007. The court need not delve into great detail with respect to these facts, however, because the court ultimately determines that limitations period contained in the Supplier Buying Agreement is dispositive.

For purposes of establishing context and the timing of Plaintiff's claims, the court notes that Quint first raised complaints about the servicing of its products in 2005. At some point in May 2006, Bastek "de-activated" Quint's instructional book on how to install crown moulding, and then re-activated it within approximately one week of Richard's request. In the summer of 2006, Quint hired Ardell Sales & Consulting, Inc. as a consultant to assist Quint in its dealings with Home Depot.

In January 2007, Quint's tools were expanded into the Empire stores and its books were indeed expanded nationally to all Home Depot stores. Around this same time, the relationship between Quint and Home Depot began to deteriorate because Quint's executives became convinced that Bastek and Ardell were conspiring to "use some devious means working together to harm Quint." *See* R. Quint Depo., at 197-98. In May 2008, Richard sent Giles Bowman, a Home Depot merchandising executive, a written complaint about Bastek. In June 2008, Richard and Carol met with several Home Depot executives

and one Home Depot attorney to discuss Quint's concerns about Bastek. In March 2009, Quint sent a letter to Home Depot's Chief Executive Officer and one of its directors outlining Quint's problems with Bastek and accusing Bastek of deliberately destroying Quint's business. On April 7, 2009, Home Depot's Merchandising Vice President sent a letter to Quint stating that Home Depot would no longer purchase Quint's products. Quint received its last purchase order from Home Depot on July 13, 2009.

### C. Contentions

Defendants argue that Plaintiff's claims are barred by the one year limitations period in the Supplier Buying Agreement. Defendants aver that the Supplier Store Service Agreement amended only a portion of the Supplier Buying Agreement, but left intact the one year limitations period in the Supplier Buying Agreement. Defendants state that Plaintiff did not file suit within one year. Even if the claims were timely, Defendants contend, the fraud claims would fail on the merits because Quint has admitted that Bastek did not make the false representations that were alleged in the complaint. Finally, Defendants aver that Quint's products were serviced in accordance with the Supplier Store Service Agreement so Quint's breach of contract claim fails.

Plaintiff responds that the Supplier Store Service Agreement was a separate contract outside of the Supplier Buying Agreement. Thus, Plaintiff's claims under the Supplier Store Service Agreement would not be governed by the one year limitations period in the Supplier

7

Buying Agreement, but rather by the six year statutory period for services under O.C.G.A. § 9-3-24. Plaintiff also alleges that there is no evidence in the record that Quint products were given a "day-to-day general servicing" through the In-Store Servicing program at Home Depot and Home Depot did not check to see whether suppliers were receiving merchandise servicing of their products. Plaintiff avers that Bastek attended one meeting with Quint in which the topic was how to "grow" Quint's products for sale at Home Depot. Plaintiff further contends that there is no evidence in the record that the Plan'O'Grams were actually implemented and therefore its breach of contract and fraud claims must proceed.

## II. Discussion

The Supplier Buying Agreement requires Quint to "bring any claim or dispute against The Home Depot (including payment disputes) within one year after the occurrence of the event giving rise to such dispute." *Id.*, ¶ 14.6(d). If Quint's claims arise under the Supplier Buying Agreement, it is clear that they would be barred by this agreed-upon limitations period. *See Hewitt Associates, LLC v. Rollins, Inc.*, 308 Ga. App. 848, 850 (2011) ("contractual periods of limitation are generally enforceable under Georgia law"); *Southern Telecom v. Level 3 Communications, LLC*, 295 Ga. App. 268, 273 (2008) (same).

Quint filed suit on June 24, 2010. As the factual recitation shows, the last possible event upon which Quint could possibly base a claim is the April 7, 2009, letter from Home Depot informing Quint that Home Depot would no longer purchase Quint's products. (Even

8

this is a generous reading given that none of the remaining claims in Plaintiff's complaint relate to this termination decision.) Plaintiff's breach of contract complaints relate more to how well Plaintiff's merchandise was being serviced in Home Depot stores. Plaintiff admits that it began raising complaints about this as early as 2005. Plaintiff's fraud claims relate to an alleged "conspiracy" between Ardell and Bastek to work together to harm Quint. Plaintiff admits that its executives had determined by the summer of 2007 that some "conspiracy" existed. All of these events took place well more than one year prior to Plaintiff filing its complaint.

Quint argues, however, that the one year limitations period does not apply to its claims because the Supplier Store Service Agreement is a separate contract from the Supplier Buying Agreement. Quint contends that the agreements are "inconsistent" and therefore an ambiguity exists as to which terms and conditions apply to the contractual agreements.

The factual premise for Quint's arguments is inaccurate. The Supplier Buying Agreement did contain provisions under the heading "In-Store Services." *See* SBA, ¶ 13.0. The Supplier Store Service Agreement specifically states that it "amends and supplements" the Supplier Buying Agreement, in particular these "In-Store Services" terms, which "shall govern the relationship" between Home Depot and the Supplier. The Supplier Store Service Agreement states that in the event of a conflict between the two documents, the Supplier

9

Store Service Agreement would prevail. However, any termination of the Supplier Store Service Agreement would not terminate the Supplier Buying Agreement.

There is no inconsistency in this arrangement. The parties specifically contracted that the Supplier Store Service Agreement was to "amend and supplement" the Supplier Buying Agreement with respect to "In-Store Services." No other portions of the Supplier Buying Agreement were to change.

Quint contends that an "inconsistency" exists because the Supplier Store Service Agreement was actually a "contract" to increase sales and grow profits for Quint. There is no language in the Supplier Store Service Agreement which would support such a contention. Indeed, one cannot imagine any circumstance under which a company would "contract" an obligation to "increase the sales and profits" of a supplier. The Supplier Store Service Agreement simply does not say what Plaintiff contends it says.

The Supplier Store Service Agreement "amends and supplements" the Supplier Buying Agreement. The Supplier Store Service Agreement does not contain any limitations period, therefore, the one year limitations period of the Supplier Buying Agreement controls. Plaintiff admits that its claims are outside the one year limitations period. The court GRANTS Defendants' motion for summary judgment as to all claims on the basis of the limitations period.

10

### III. Conclusion

The court GRANTS Defendant's motion for summary judgment [58].

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint. The only claim remaining in the litigation is Defendants' counterclaim for attorney's fees.

**IT IS SO ORDERED** this 30th day of August, 2012.

        S/ J. Owen Forrester
        J. OWEN FORRESTER
        SENIOR UNITED STATES DISTRICT JUDGE